[No. B090407. Second Dist., Div. Five. Dec. 26, 1996.]

SANDRA SISCO, Plaintiff and Appellant, v.
COSGROVE, MICHELIZZI, SCHWABACHER, WARD & BIANCHI et
al., Defendants and Respondents.

1304

**COUNSEL**

Donfeld, Kelley & Rollman, Paul M. Kelley and Amy Semmel for Plaintiff and Appellant.

Biesty, McCool & Garretty, Clinton T. McCool and Reetha Haynes-Garretty for Defendants and Respondents.

**OPINION**

**GRIGNON, J.**—Plaintiff and appellant Sandra Sisco (mother) appeals from a judgment of dismissal in this legal malpractice action after the demurrer of

defendants and respondents Cosgrove, Michelizzi, Schwabacher, Ward & Bianchi and Frank G. Michelizzi (attorneys) was sustained without leave to amend. Mother alleged attorneys had negligently failed to ensure that she would be the sole beneficiary of her minor son's settlement proceeds upon his death and thereby permitted the son's estranged father to inherit half of the proceeds. We conclude the demurrer was properly sustained on the ground mother cannot prove any damages arising from attorneys' alleged negligence. The settlement could not have been structured so as to permit the estranged father to, in effect, be disinherited by his minor son. We therefore affirm.

### FACTS AND PROCEDURAL BACKGROUND

On December 17, 1986, mother consulted attorneys regarding the possibility of an action for damages arising out of the sexual molestation of Jaime Wayne Pugh (son), born October 18, 1977. Mother signed a retainer agreement hiring attorneys to "prosecute any legal action which Client may have for injuries resulting from the molestation of her child." Mother believed attorneys represented her, as well as son. Indeed, attorneys recommended mother seek damages in her own name to cover her expenses for counseling.

On January 14, 1987, attorneys filed an action in the name of son, through mother as his guardian ad litem. On June 29, 1988, a settlement was reached with the child molestation defendant and his insurer, West American Insurance Company. The settlement, as approved by the trial court, provided for the following schedule of payments: (1) an initial payment of $80,000, $76,000 of which constituted attorney's fees; (2) $250 per month to age 18; (3) $25,000 per year from age 18 through age 21; (4) $500 per month from age 18 through age 21; (5) $1,000 per month from age 18 until death (increasing annually by 3 percent); (6) $25,000 at age 30; (7) $50,000 at age 40; (8) $100,000 at age 50; and (9) $250,000 at age 60. Payments during minority were to be made "by and through [mother], his Guardian ad Litem." Payments after age 18 were to be made directly to son. If son died prior to the payment date of any sum, the remaining payments were to be made to his estate. The $1,000 monthly payments were guaranteed for 30 years.

West American assigned its obligation to make payments under the settlement agreement to New York Life Insurance and Annuity Corporation. The latter purchased an annuity from New York Life Insurance Company in

order to fund the payments. The annuity was owned by New York Life Insurance and Annuity Corporation.[1]

Pursuant to the settlement agreement, any payments to be made after son's death were to be paid to his estate as beneficiary. "No [beneficiary] designation change nor any revocation thereof shall be effective unless it is in writing and delivered to [West American] or [New York Life Insurance and Annuity Corporation]." The annuity contract similarly provided that son's estate was the beneficiary in the event of son's death. It further provided that New York Life Insurance and Annuity Corporation, as the owner of the annuity, had the right to change the beneficiary designation during son's lifetime.[2]

However, mother was told by attorneys that she was the sole beneficiary of the settlement funds until son reached 18. This was important to mother because she had separated from father in 1980 or 1981, due to domestic violence. Mother did not want father involved in the child molestation litigation. Based on attorneys' advice, mother agreed to the settlement.

After the settlement was concluded, mother and son moved to Kentucky. On May 13, 1993, son was involved in a fatal accident in Kentucky. Father made a claim against son's estate for one-half of the settlement funds.[3]

Mother then brought the instant action against attorneys, contending they breached their duty to her by failing to name her in the settlement documents as the sole beneficiary instead of the estate. Attorneys demurred to the first amended complaint on the grounds that: (1) no duty was owed mother in that she was not attorneys' client; and (2) mother suffered no damages because the court in the underlying action could not have approved a settlement designating mother as the sole beneficiary of the settlement proceeds. The demurrer was sustained without leave to amend. The trial court concluded that although mother had alleged an attorney-client relationship, she had suffered no damages from any alleged negligence of attorneys.

An order of dismissal was entered on January 19, 1995. Mother filed a premature notice of appeal on January 18, 1995. We treat the notice of

---

[1] We have taken judicial notice of the annuity.

[2] The annuity contract provided in relevant part: "In this policy, the words 'you' and 'your' refer to the owner of the policy. As the owner, you have all rights of ownership in this policy while the Annuitant is living. These rights include the right to receive the payments or to name one or more payees to receive these payments. To [exercise] these rights, you do not need the consent of any successor owner or beneficiary." "While the Annuitant is living, you can change a beneficiary in a notice you sign which gives us the facts that we need."

[3] According to mother's brief on appeal, father was successful in this claim.

appeal as filed immediately after the dismissal. (Cal. Rules of Court, rule 2(c).)

## DISCUSSION

It is axiomatic that there is no cause of action for legal malpractice without damages proximately caused by the malpractice. (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; *Ishamel* v. *Millington* (1966) 241 Cal.App.2d 520, 523 [50 Cal.Rptr. 592].) Attorneys argue mother's loss of the half of the settlement funds inherited by father is not attributable to any breach of duty on their part, but to California law mandating the disposition of the proceeds of a minor's settlement. Mother contends the demurrer was improperly sustained because the court in the underlying action could have legally approved a settlement agreement in which she was designated as the sole beneficiary of the settlement funds in the event of son's death prior to attaining majority.

*Standard of Review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

*Disposition of a Minor's Estate*

A minor cannot make a contract relating to any personal property not in the immediate possession or control of the minor. (Fam. Code, § 6701, subd. (c).)[4] Thus, a minor cannot contract with respect to a future interest. Nor

---

[4]This provision was previously codified at Civil Code former section 33.

does a parent have any control over the property of a minor. (*Id.* at § 7502.)[5] A minor cannot make a will. (Prob. Code, § 6100.) As such, a minor dies intestate. (*Id.* at § 6400.) In the absence of any spouse or issue, at death, a minor's estate is distributed to the minor's parents equally. (*Id.* at § 6402, subd. (b).)

▆▆▆ Mother contends that she could have been designated as beneficiary of the payments under the settlement agreement. We disagree. Son did not have the legal capacity to designate a beneficiary. Any designation of a beneficiary made during son's minority would have been void as either a testamentary act or an attempted disposition of a future interest.[6] Son was statutorily prohibited from making an enforceable agreement to give his mother any rights he had to the settlement funds which were to be paid in the future, and mother could not make such an agreement on his behalf.[7] In short, the law neither allows a minor child to disinherit a parent nor to contract around this prohibition by assigning a future interest to just one parent. As such, mother could not have been designated in the settlement agreement as the sole beneficiary of the settlement proceeds.

*Insurance Code Section 10112*

Alternatively, mother contends that the statutory restrictions on the exercise of testamentary intent by a minor could have been bypassed by a beneficiary designation in the annuity contract as opposed to the settlement agreement. Mother relies on Insurance Code section 10112, which provides, with certain exceptions, that a minor can enter into a life insurance or annuity contract on the minor's life, for the benefit of the minor or, among others, the minor's mother. Insurance Code section 10112 provides, in pertinent part: "[I]n respect to life or disability insurance, or annuity contracts (except as provided in . . . Chapter 4 (commencing with Section 3600) of Part 8 of Division 4 of the Probate Code), heretofore or hereafter issued to or upon the life of any person not of the full age of 18 years for the benefit of such minor or for the benefit of the father, mother, husband, wife, child, brother, or sister, of such minor, . . . such minor shall not, by reason only of such minority, be deemed incompetent to contract for such . . . annuity, . . . or to exercise all contractual rights thereunder . . . ." Mother

---

[5]This provision was previously codified at Civil Code former section 202.

[6]Thus, the settlement agreement provision allowing son to effect a change in beneficiary by writing New York Life Insurance and Annuity Corporation would only have been effective after son reached majority.

[7]Even if son had received the entire settlement fund rather than structured settlement payments, he was not legally capable before majority of bequeathing it solely to mother in the event of his death.

argues that pursuant to this section, son was not prevented from designating her as beneficiary of the annuity contract which funded the settlement. We are not persuaded by this argument.

Insurance Code section 10112 provides that a minor is not deemed to be incompetent by reason of minority to exercise certain contractual rights in the limited circumstances designated by the statute. It does not give a minor additional rights not already provided by the terms of a minor's annuity contract.

The annuity issued in this case named son as the annuitant and payee. Son was not, however, the owner of the annuity. The annuity was owned by New York Life Insurance and Annuity Corporation. By the terms of the policy, the right to designate a beneficiary was held by the owner of the annuity, not the annuitant or payee. Thus, whether son was prohibited by his minority from exercising his rights under the annuity contract is irrelevant; he had no right under the annuity contract to designate a beneficiary.

*Alternative Dispositions of Settlement Proceeds*

 Finally, mother contends that, without respect to the settlement agreement actually executed and the annuity contract actually purchased, some enforceable arrangement could have been reached by which she would have been designated the sole beneficiary of the settlement proceeds in the event of son's death.

When a minor brings an action through a guardian ad litem, the guardian ad litem has the power to settle the action subject to court approval. (Code Civ. Proc., § 372.) "Any money or other property to be paid or delivered pursuant to the order or judgment for the benefit of a minor . . . shall be paid and delivered as provided in Chapter 4 (commencing with Section 3600) of Part 8 of Division 4 of the Probate Code." (*Ibid.*)

Probate Code division 4, part 8, chapter 4 applies whenever the court approves a compromise of an action to which a minor is a party and the compromise provides for the payment of money for the minor's benefit. (Prob. Code, § 3600.) Probate Code section 3601 provides that the court approving the compromise shall direct that an amount for reasonable expenses and attorney's fees be paid from the settlement. Probate Code section 3602 governs the disposition of the remainder. "If there is no guardianship of the estate of the minor . . . , the remaining balance of the money and other property . . . shall be paid, delivered, deposited, or invested as provided . . . (commencing with [Probate Code section] 3610)." (*Id.* at § 3602, subd. (a).)

At the time of the settlement in this case, the court approving the settlement was authorized to order one or more of the following: (a) the appointment of a guardian of the estate and the delivery of the settlement to that guardian; (b) the deposit of the settlement in a bank account or single-premium deferred annuity to be paid only upon order of the court; (c) if the remaining balance did not exceed $20,000, the holding of the money "on such other conditions as the court in its discretion determines to be in the best interest of the minor"; (d) if the remaining balance did not exceed $5,000, the payment or delivery of the money to a parent of the minor; (e) if the remaining balance did not exceed $10,000, the transfer of all or any part of the money to a custodian for the benefit of the minor under the California Uniform Transfers to Minors Act.[8] (Prob. Code, § 3611.)[9] None of these provisions authorize the minor, the minor's parent, a guardian ad litem or the court to designate a beneficiary of settlement funds in the event of the minor's death. None of these provisions authorize a minor to exercise testamentary intent or another to exercise testamentary intent on the minor's behalf. Thus, the general rule prohibiting the exercise of testamentary intent by a minor applies to a minor's settlement funds.

Mother argues the settlement funds could have been used to purchase a statutorily authorized single-premium deferred annuity. Mother further argues that Insurance Code section 10112 applies to annuity contracts purchased with a minor's settlement funds, and therefore, the settlement could have been funded in such a way as to enable son to designate a beneficiary of a statutorily authorized annuity.

The Probate Code, however, does not provide for the purchase of any annuity with a minor's settlement funds other than a "single-premium deferred annuity." (Prob. Code, §§ 3602, subd. (c)(1), 3611, subd. (b).)[10] The Probate Code defines a " 'Single-premium deferred annuity' " as "an annuity offered by an admitted life insurer for payment of a one-time lump-sum premium and for which the insurer neither assesses any initial charges or administrative fees against the premium paid nor exacts or assesses any penalty for withdrawal of any funds by the annuitant after a period of five years." (Prob. Code, § 1446.)

---

[8]The California Uniform Transfers to Minors Act does not apply to a tort settlement in excess of $10,000. (Prob. Code, § 3907, subd. (c); Cal. Law Revision Com. com., 53 West's Ann. Prob. Code (1991 ed.) foll. § 3907, p. 134.)

[9]This section has since been amended to also allow for the establishment of a special needs trust or deposit of the funds with the county treasurer.

[10]Mother mistakenly relies on Probate Code section 3602, subdivision (c)(1), which allows a guardian of the estate to petition for deposit of the funds in a single-premium deferred annuity subject to withdrawal upon court authorization. As there was no guardian of the estate in this case, the parallel provision in Probate Code section 3611, subdivision (b) applies.

Under these provisions, when a minor's settlement is paid in a lump sum, the court may approve placement of the funds in an annuity from which the minor can withdraw the funds after five years. Withdrawal of funds during minority is also subject to authorization of the court. This option is simply not applicable to the settlement at issue in this case. First, the settlement was not paid in a lump sum to be disbursed by the court, but was a structured settlement comprised of a series of payments to be funded by an annuity. Second, such a lump sum payment would carry the potential for radically altering the income tax consequences of the settlement. (26 U.S.C. § 104(a)(2); 26 U.S.C. § 130(c)(2)(B).) Third, the settlement agreement did not contemplate a single-premium deferred annuity as defined by statute. Son did not have the right to withdraw the funds without penalty after five years. Instead, the settlement agreement provided that son could not accelerate the payments. Fourth, court approval would have been required for the withdrawal of funds, so mother would not have had unilateral control of the policy.

Each of the above reasons makes mother's theoretical settlement scenario more speculative and creates a substantial barrier, if not an absolute bar, to mother's proof of damages. However, assuming that mother can prove she could have obtained a single-premium deferred annuity without radically altering the settlement, son still would not have been able to designate her as beneficiary of the annuity. A beneficiary designation is either a testamentary act or a disposition of a future interest in property, and would therefore be barred by Probate Code section 6100 or Family Code section § 6701, subdivision (c), unless the exception of Insurance Code section 10112 applies. However, Insurance Code section 10112 by its own terms does not apply to annuities funded with a minor's settlement proceeds. Insurance Code section 10112 applies to annuity contracts "(except as provided in . . . Chapter 4 (commencing with Section 3600) of Part 8 of Division 4 of the Probate Code)." The predecessor to this exclusion was enacted by 1976 amendment. The statute amended Probate Code former sections 1431 and 1510, the sections then governing disposition of a minor's settlement, to include the option of deposit in a single-premium deferred annuity. At the same time, the Legislature amended Insurance Code section 10112 so that it would apply to annuity contracts "except as provided in Sections 1431 and 1510 of the Probate Code." (Stats. 1976, ch. 875, § 1, pp. 1985-1986.) The Legislature's meaning is clear: any rights granted to minors by Insurance Code section 10112 do not apply to annuity contracts purchased with funds paid in settlement of a minor's claim. Thus, mother has suggested no possible disposition of settlement proceeds that would have enabled son to have designated mother as the sole beneficiary in the event of his death during minority.

*Conclusion*

Mother's cause of action against attorneys is based on the theory that, without notice to or the consent of father, the settlement agreement could have been structured in such a way that father would lose his statutory right to inherit from son. The law does not permit such an arrangement, and the court in the underlying action would not have approved it. Mother's cause of action is also based on the theory that the insurance company would have agreed to such a completely different settlement and did not in fact have its own business, financial and tax reasons for structuring the settlement as it did. Such a claim is sheer speculation.

## DISPOSITION

The judgment is affirmed. Sandra Sisco is to pay the costs of Cosgrove, Michelizzi, Schwabacher, Ward & Bianchi and Frank G. Michelizzi on appeal.

Turner, P. J., and Godoy Perez, J., concurred.